## FLEMING & SONS, Inc., v. GULF, C. & S. F. RY. CO.

No. 13041.

United States Court of Appeals
Fifth Circuit.

March 6, 1951.

Frank A. Leffingwell, Dallas, Tex., for appellant.

Robert W. Alexander, Galveston, Tex., Charles K. Bullard, Dallas, Tex., for appellee.

Before HOLMES and RUSSELL, Circuit Judges, and DOOLEY, District Judge.

RUSSELL, Circuit Judge.

Appellant shipped to its consignee at Charlestown, West Virginia, two carloads of building paper and paid the freight rates thereon as computed and charged by the carrier. Upon the basis of a claim thereafter made that an excessive rate had been charged, a refund was made by the initial carrier as to each shipment upon the basis of the rate claimed by the shipper. Thereafter the carrier instituted the present suit to recover the difference in amount between the freight computed on the rate of sixty-seven cents per hundredweight, upon which basis the refund had been made, and as finally claimed, a rate of ninety-one cents per hundredweight, which was the rate at which the original freight charges had been computed and paid. The trial Court adjudged the defendant-shipper, appellant here, liable for the difference, and this appeal followed.

Other issues are sought to be presented and other errors specified, but the primary and controlling question in this case involves the proper construction and application of the bills of lading under which the shipments were delivered and carried. In the trial Court there was no real issue as to the correct tariff rate as such, but merely which route should have been employed in the light of the directions of the shipper as shown by the bills of lading. When this is determined, there remains no genuine dispute between the parties as to the result that should have been reached in the trial Court.

Each of the bills of lading referred to receipt of the shipment "by Santa Fe Company," and each contained routing directions from Dallas, Texas, to Charlestown, West Virginia, as follows: "Santa Fe: C. & O." No rate was specified. The foundation of the plaintiff's suit was that "Santa Fe" meant the entire Santa Fe system and that under such directions it had properly shipped the cars by direct route over this system to Chicago and there delivered them to the Chesapeake & Ohio. The defendant contended that by "Santa Fe" in the routing instructions was meant the initial carrier to which it delivered the shipment, that is, the Gulf, Colorado and Santa Fe Railway Company. This company is a part of the Santa Fe system. There is no corporation "Santa Fe Company." There is testimony by appellant's officer, to some extent versed in traffic matters, that by this was meant the Gulf, Colorado and Santa Fe Railway Company. The trial Judge, while not expressly so finding, in his oral opinion clearly indicated that he construed the routing directions of the bills of lading to mean Santa Fe system, and that therefore the routing from Dallas, Texas, over that system to the connection with the Chesapeake & Ohio at Chicago was required and thus made the 91 cent rate the proper one for the shipments. The appellee urges upon us that this is the proper construction.

We are of the opinion that under the circumstances of this case the construction and application given the transaction by the parties in connection with the original claim for refund was the correct one, and that the finding of the trial Court to the contrary is without support. The routing direction of "Santa Fe" was ambiguous and could have as well referred to the Gulf, Colorado and Santa Fe Railway Company as to the Santa Fe system.

The Gulf, Colorado and Santa Fe Railway Company has no direct connection with the Chesapeake and Ohio. In view of the ambiguity in the routing directions, it was the duty of the carrier to either require the instructions to be clarified or, to treat the routing directions as incomplete because not plainly designating a continuous route. In cases of incomplete routing directions, there is an obligation upon the initial carrier to ship by the cheapest reasonably available route. Thus, in either event, there was a defect in the routing instructions, and in the absence of requiring explicit instructions, the carrier was not entitled to collect, under the applicable tariff, any rate higher than that required for the shipments from Dallas, Texas, to Charlestown, West Virginia, delivered to the Chesapeake and Ohio, when computed for shipment over the cheapest, reasonable avail-

able route ascertained in the light of the Gulf, Colorado and Santa Fe Railway Company as the initial carrier, and with no reliance upon the words "Santa Fe" to mean the entire Santa Fe system. We observe that our conclusions are in accord with determinations of the Interstate Commerce Commission. Piedmont Corporation v. Gainesville & Northwestern Railroad Company, 153 I. C. C. 751; Midland Linseed Products Company v. Director-General, 77 I. C. C. 242. These are of course not conclusive, but are particularly persuasive when related to the technical features of tariff applications and procedures, and the proper construction of routing directions.

The judgment appealed from is reversed and the cause remanded, with direction that judgment be entered in favor of the defendant.